UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:    3/2/17
```

```
------------------------------------------------------------X
ROBERT MACIAS,                                    :
                                                  :
                          Plaintiff,              :
                                                  :
                                                  :
              -against-                           :
                                                  :
OCWEN LOAN SERVICING LLC; DEUTSCHE                :
BANK NATIONAL TRUST COMPANY as                    :
Trustee for DSLA Mortgage Loan Trust 2007-        :
AR1; and DOES 1 THROUGH 100 INCLUSIVE,            :
                                                  :
                                                  :
                          Defendants.             :
------------------------------------------------------------X
```

16-CV-2215 (VEC)

MEMORANDUM
OPINION & ORDER

VALERIE CAPRONI, United States District Judge:

Plaintiff Robert Macias brings this suit against Defendants Ocwen Loan Servicing LLC ("Ocwen") and Deutsche Bank National Trust Company as Trustee for DSLA Mortgage Loan Trust 2007-AR1 (the "Trust," and collectively with Ocwen, "Defendants") effectively to prevent foreclosure on his California home even though he has defaulted on his mortgage loan. In his Amended Complaint, Plaintiff alleges that Ocwen, the loan servicer, and the Trust, which purportedly owns the Deed of Trust and Note for Plaintiff's mortgage, have violated the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*,  and the California Homeowner Bill of Rights ("HBOR"). In addition, Plaintiff alleges claims for constructive fraud and slander of title and seeks a declaratory judgment. Defendants move to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants' motion is GRANTED.

**BACKGROUND**

On or about January 18, 2007, Plaintiff received a $576,000 mortgage loan (the "Loan") from non-party Downey Savings and Loan ("Downey") to refinance property located at 5833 Seminole Way, Fontana, CA 92336 (the "Property").  Am. Compl. ¶ 9 (Dkt. 23).  On March 7, 2012, the Trust recorded the assignment to the Trust of the Note and Deed of Trust; according to the recorded Corporation Assignment Deed of Trust, Downey executed the assignment on February 1, 2007, years before it was recorded.  *Id.* ¶¶ 10-11.

Plaintiff alleges that the assignment was invalid for several reasons.  First, it was recorded after US Bank N.A. purchased Downey's deposits and loans in 2008 when Downey went out of business.  *Id.* ¶¶ 11, 26-30.  According to Plaintiff, the Trust claims ownership of the Note, while US Bank N.A. may own the Deed of Trust.  *Id.* ¶ 28.  Plaintiff alleges that the Trust and US Bank may therefore have competing clams of ownership over Plaintiff's Note and Deed of Trust.  *Id.* ¶ 30.  Second, Plaintiff contends that the assignment was invalid because the transaction failed to comply with the governing Pooling and Servicing Agreement ("PSA").  *Id.* ¶¶ 32-38.  Specifically, Plaintiff maintains that the PSA required the Note to be endorsed, transferred, and delivered to the Trust prior to a specified closing date, and there are no documents or records to demonstrate that Defendants satisfied those conditions.  *Id.* ¶¶ 36-38.  For that reason, according to Plaintiff, the assignment was invalid.  *Id.* ¶¶ 37, 39.  Furthermore, Plaintiff alleges that the Note and Deed of Trust were split and held by distinct and unrelated entities for at least five years, in violation of the terms of the Note, the Deed of Trust, and California law.  *Id.* ¶ 25.

In addition to alleging that Defendants can neither collect on the Loan nor foreclose on the Property because the Deed of Trust and Note were not validly assigned to the Trust, Plaintiff contends that Defendants have attempted to collect portions of the loan that have been

discharged.  Plaintiff alleges that on April 30, 2012, Plaintiff received a Form 1099-C[1] from

Ocwen when Defendants purportedly agreed to discharge $66,926.19 from his principal balance.

*Id.* ¶ 12.  On January 1, 2014, Plaintiff received another Form 1099-C from Ocwen when

Defendants purportedly agreed to discharge an additional $332,567.86 from the principal

balance.  *Id.* ¶ 14.  According to Plaintiff, despite those discharges, Defendants continue to

charge Plaintiff for the full principal balance, plus interest, fees, and penalties.  *Id.* ¶ 15.

On August 27, 2015, Western Progressive, LLC ("Western"), which had replaced the

original trustee of the Deed of Trust in 2013, recorded a Notice of Default and Election to Sell

under Deed of Trust, which included a Notice of Compliance pursuant to California Civil Code

Section 2923.55(c).  *Id.* ¶¶ 13, 16.  According to Plaintiff, the Declaration of Compliance, which

is part of the Notice of Compliance, was false and violated California law because neither

Western nor the Defendants had contacted Plaintiff to assess Plaintiff's financial situation or to

explore options to avoid foreclosure.  *Id.* ¶ 17.  Within the allotted time, Plaintiff requested that

Western validate the debt and send him a copy of the Note, but neither Western nor the

Defendants responded.  *Id.* ¶ 19.  On January 4, 2016, Western recorded a Notice of Trustee's

Sale, setting the sale of the Property for February 11, 2016.  *Id.* ¶ 20.  The Notice indicated that

the estimated unpaid loan balance was $695,135.73, which did not account for the allegedly

discharged principal.  *Id.*  The foreclosure sale was later postponed to March 14, 2016.  *Id.* ¶ 22.

Meanwhile, in January 2016, Plaintiff obtained a loan audit and learned that the Loan had been

---

[1]    A Form 1099-C is an Internal Revenue Service form.  Creditors reporting under 26 U.S.C. § 6050P "'that discharge[ ] an indebtedness of any person . . . of at least $600 during a calendar year must file an information return on Form 1099–C with the Internal Revenue Service.'"  *Kaff v. Nationwide Credit, Inc*., No. 13CV5413 (SLT) (VVP), 2015 WL 12660327, at *3 (E.D.N.Y. Mar. 31, 2015) (citing 26 C.F.R. § 1.6050P-1(a)).

allegedly improperly assigned.  *Id.* ¶¶ 21, 23-28.  Plaintiff commenced this lawsuit in March

2016.

## DISCUSSION

### I.       Legal Standard

"To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege

sufficient facts, taken as true, to state a plausible claim for relief."  *Johnson v. Priceline.com*,

Inc., 711 F.3d 271, 275 (2d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56

(2007)).  A plaintiff "must provide the grounds upon which his claim rests through factual

allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns Inc.*

*v. The Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Courts must "'accept all allegations in the complaint as true and draw all inferences in the non-

moving party's favor.'"  *L.C. v. LeFrak Org., Inc.*, 987 F. Supp. 2d 391, 398 (S.D.N.Y. 2013)

(quoting *LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009)).

Furthermore, courts are generally confined to "the four corners of the complaint" and must "look

only to the allegations contained therein."  *Perez v. Westchester Foreign Autos, Inc.*, No. 11–

CV–6091(ER), 2013 WL 749497, at *5 (S.D.N.Y. Feb. 28, 2013) (citing *Roth v. Jennings*, 489

F.3d 499, 509 (2d Cir. 2007)).

### II.      Plaintiff Has Failed to State a Claim for Violations of the FDCPA

Plaintiff alleges Defendants have violated various provisions of the FDCPA.  Am.

Compl. ¶¶ 40-46.  Defendants argue that Plaintiff fails to state a claim pursuant to the FDCPA

because (1) Defendants are not debt collectors subject to the FDCPA, and (2) Plaintiff's

allegations regarding partial discharges are deficient as a matter of law.  Defs. Mem. 4 (Dkt. 27).

Conceding that the Trust is not a debt collector under the FDCPA but instead a creditor

exempt from the FDCPA's requirements, Plaintiff voluntarily dismisses the FDCPA claim

against the Trust.  Pl. Opp. ¶ 26 (Dkt. 29); *see also* Def. Mem. 5-6.  Plaintiff also concedes that

he has failed to allege that Ocwen, as servicer, obtained the mortgage when it was already in

default, Pl. Opp. ¶ 25, and concedes that the FDCPA exempts from the definition of "debt

collector" any entity that attempts to collect a debt that was not in default at the time the entity

obtained the debt, *see* 15 U.S.C. § 1692(a)(6)(F).

"[T]he FDCPA only covers servicers who obtain a mortgage that is *already* in default."

*Dumont v. Litton Loan Servicing, LP*, No. 12-CV-2677 (ER) (LMS), 2014 WL 815244, at *17

(S.D.N.Y. Mar. 3, 2014).  Because Plaintiff has failed to allege that Ocwen began servicing the

Loan after Plaintiff defaulted on the Loan, Plaintiff has failed to state a claim pursuant to

FDCPA against Ocwen.  *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 96 (2d

Cir. 2012) ("As the district court held, the complaint does not allege that [defendant] acquired

[plaintiff's] debt before it was in default and so fails plausibly to allege that [defendant] qualifies

as a debt collector under the FDCPA."); *Dumont*, 2014 WL 815244, at *17 ("To survive a

motion to dismiss, an FDCPA claim must allege that this statutory condition was satisfied.");

*Costigan v. CitiMortgage, Inc.*, No. 10 CIV. 8776 (SAS), 2011 WL 3370397, at *9 (S.D.N.Y.

Aug. 2, 2011) ("The Amended Complaint does not allege that [plaintiff's] loan was in default at

the time [defendant] 'obtained' that loan.  As a result, [defendant] is excluded from the definition

of 'debt collector' under the statute.  [Plaintiff's] claim under the FDCPA is therefore

dismissed.").

Accordingly, Plaintiff's FDCPA claim against the Trust is dismissed with prejudice, and

Plaintiff's FDCPA claim against Ocwen is dismissed without prejudice.[2]

---

[2]       Defendants also argue that Plaintiff's FDCPA claims should be dismissed because courts have held that the
filing of a Form 1099-C alone does not discharge a debt.  *See* Defs. Mem. 6-8.  Plaintiff's allegation, however, is
that he "received a 1099-C from Ocwen when the Defendants agreed to a permanent discharge," Am. Compl. ¶ 12;
*see also id.* ¶ 14, which can fairly be read to mean that Defendants agreed to the discharge, and the Form 1099-C
merely evidences that agreement.  In other words, Plaintiff does not allege that the Form 1099-C itself is a discharge

### III.     Plaintiff Has Failed to State a Claim for Violation of TILA

Plaintiff alleges that Defendants violated TILA by failing to disclose the assignment of the Note in 2007, and the assignment was purportedly concealed by Defendants and thus not reasonably discovered by Plaintiff until the 2016 loan audit.  Am. Compl. ¶¶ 47-51.[3]  Defendants argue that Plaintiff's TILA claim is barred by the statute of limitations and that equitable tolling does not apply.  Def. Mem. 8-9.  "Pursuant to 15 U.S.C. § 1640(e), a borrower seeking damages under TILA must file an action 'within one year from the date of the occurrence of the violation.'"  *Midouin v. Downey Sav. & Loan Ass'n, F.A.*, 834 F. Supp. 2d 95, 108 (E.D.N.Y. 2011) (quoting 15 U.S.C. § 1640(e)).  In addition, "[t]here is a three year limitations period on the rescission remedy that begins to run upon the consummation of the transaction or sale of the property, whichever occurs first."  *Ledgerwood v. Ocwen Loan Servicing LLC*, No. 15 CIV. 1944 (BMC), 2015 WL 7455505, at *4 (E.D.N.Y. Nov. 21, 2015).  According to the March 7, 2012 record of assignment, the Note and Deed of Trust were assigned on February 1, 2007.  Am. Compl.  ¶ 10.  Plaintiff filed this lawsuit on March 24, 2016, more than nine years after the assignment and four years after the assignment was recorded.  Plaintiff appears to concede that the statute of limitations has run; he argues only that the statute of limitations should be tolled for fraudulent concealment.  Pl. Opp. ¶¶ 33-38.  Plaintiff, however, has not adequately alleged fraudulent concealment.

---

but alleges instead that it is evidence that there was a discharge.  Given that the Court must construe all factual allegations in favor of the nonmoving party, *Shalam v. KPMG, LLP*, No. 05CV3602 (HB), 2005 WL 2139928, at *2 (S.D.N.Y. Sept. 6, 2005), Plaintiff's allegation that Defendants discharged portions of the debt suffices, albeit barely, at the motion to dismiss stage.

[3]      Count II of Plaintiff's Amended Complaint alleges that Defendants failed to disclose the assignment of the Note "in July 2005," Am. Compl. ¶ 49, but elsewhere Plaintiff alleges that he received the loan in January 2007 and that the document recording the assignment states that the assignment occurred in February 2007, *id.* ¶¶ 9-10. Accordingly, the Court believes the 2005 date is a typographical error.

"A claim of fraudulent concealment must be pled with particularity, in accordance with the heightened pleading standards of Fed. R. Civ. P. 9(b)." *Hinds Cty., Miss. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 520 (S.D.N.Y. 2009). "'Under federal common law, a statute of limitations may be tolled due to the defendant's fraudulent concealment if the plaintiff establishes that: (1) the defendant wrongfully concealed material facts relating to defendant's wrongdoing; (2) the concealment prevented plaintiff's discovery of the nature of the claim within the limitations period; and (3) plaintiff exercised due diligence in pursuing the discovery of the claim during the period plaintiff seeks to have tolled.'" *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 157 (2d Cir. 2012) (quoting *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 543 (2d Cir. 1999)). "Equitable tolling is available in rare and exceptional circumstances, where the court finds that extraordinary circumstances prevented the party from timely performing a required act, and that the party acted with reasonable diligence throughout the period he sought to toll." *Grimes v. Fremont Gen. Corp.*, 785 F. Supp. 2d 269, 286 (S.D.N.Y. 2011) (citations and quotations marks omitted).

Plaintiff has not satisfied the heightened pleading standard to allege fraudulent concealment.  Plaintiff has alleged in general terms that Defendants were required to disclose the assignment, that they failed to do so, that they concealed the assignment, and that the assignment was not reasonably ascertainable by Plaintiff until the 2016 loan audit.  Am. Compl. ¶¶ 48-50. "[I]n cases involving TILA, the courts have held uniformly that fraudulent conduct *beyond the nondisclosure itself is* necessary to equitably toll the running of the statute of limitations . . . ." *Grimes*, 785 F. Supp. 2d at 286 (quotation marks and citation omitted).  Because Plaintiff has alleged only that Defendants failed to disclose the assignment, Plaintiff has failed to allege fraudulent concealment.  Nor has Plaintiff alleged—let alone with particularity—that Defendants' acts of concealment prevented discovery of the claim or that Plaintiff exercised due

7

diligence to discover the claim during the period Plaintiff seeks to toll.  *Koch*, 699 F.3d at 157.

That Plaintiff may have had no reason to audit the Loan until Defendants sought to foreclose on

the Property does not mean that Defendants took any action to conceal the alleged TILA

violation.  *See McAnaney v. Astoria Fin. Corp*., No. 04-CV-1101 (JFB) (WDW), 2007 WL

2702348, at *9 (E.D.N.Y. Sept. 12, 2007) ("[A]bsent some affirmative concealing conduct by the

defendant beyond the nondisclosure of information required by TILA, a plaintiff's inability to

discover a nondisclosure is not enough to toll the statute." (quotation marks and citation

omitted)), *on reconsideration in part,* No. 04-CV-1101 (JFB) (WDW), 2008 WL 222524

(E.D.N.Y. Jan. 25, 2008).

Accordingly, Plaintiff's TILA claim is dismissed with prejudice.

## IV.    Plaintiff Has Failed to State a Constructive Fraud Claim[4]

Plaintiff alleges that Defendants have committed constructive fraud because they have

materially misrepresented the Trust's status as the holder and owner of the Note and Deed of

Trust.  Am. Compl. ¶¶ 52-59.  "Constructive fraud is a unique species of fraud applicable only to

a fiduciary or confidential relationship."  *Salahutdin v. Valley of California, Inc.*, 29 Cal. Rptr.

---

[4]       This Court has diversity jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1332: the
parties are citizens of different states and the amount in controversy exceeds $75,000.  Am. Compl. ¶¶ 4-6, 9.  A
federal court sitting in diversity must apply the choice-of-law rules of the forum State, which in this case is New
York.  *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016).  The parties appear
to dispute whether New York or California law applies to Plaintiff's tort claims; Defendants apply New York law in
their opening brief, while Plaintiff argues California law in his opposition brief.  "When confronted with a choice of
law question, New York courts generally look to the law of the jurisdiction that has 'the greatest interest in the
litigation,' as determined by the 'facts or contacts which . . . relate to the particular law in conflict.'"  *Watts v.
Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 345 (E.D.N.Y. 2008) (quoting *Intercontinental Planning, Ltd. v.
Daystrom, Inc.*, 24 N.Y.2d 372, 382 (1969)).  "When the law is one which regulates conduct, such as fraudulent
conveyance statutes, . . . the law of the jurisdiction where the tort occurred will generally apply because that
jurisdiction has the greatest interest in regulating behavior within its borders."  *Lyman Commerce Sols., Inc. v. Lung*,
No. 12-CV-4398, 2013 WL 4734898, at *4 (S.D.N.Y. Aug. 30, 2013) (quotation marks and citations omitted).  "A
tort occurs in the place where the injury was inflicted, which is generally where the plaintiffs are located."  *Id.*
(citation omitted).  Here, the underlying mortgage transaction, the Property, the foreclosure, the failure to disclose
the assignment, and the recording in bad faith of the foreclosure notices—the grounds for Plaintiff's tort claims—all
occurred in California.  Accordingly, California has the greatest interest in regulating the conduct at issue, and this
Court applies California law to Plaintiff's constructive fraud and slander of title claims.

2d 463, 466 (1994) (quotation marks and citation omitted).  "Section 1573 of the California Civil Code creates a statutory cause of action for constructive fraud."  *Gen. Am. Life Ins. Co. v. Rana*, 769 F. Supp. 1121, 1126 (N.D. Cal. 1991).   "The elements of a cause of action for constructive fraud are (1) a fiduciary relationship; (2) nondisclosure; (3) intent to deceive; and (4) reliance and resulting injury (causation)."  *Id.* (citing *Younan v. Equifax Inc.*, 169 Cal. Rptr. 478, 489 n. 14 (1980)).  "'Unlike actual fraud, constructive fraud depends on the existence of a fiduciary relationship of some kind, and this must be alleged.'"  *Lopez v. GMAC Mortg.*, No. CV F 11-1795 (LJO) (JLT), 2011 WL 6029875, at *11 (E.D. Cal. Dec. 5, 2011) (quoting *Younan*, 169 Cal. Rptr. at 478).

Plaintiff argues that he has alleged a fiduciary relationship because, pursuant to California Civil Code Section 1710(2), a lender owes a duty to a borrower not to misrepresent facts negligently.  Pl. Opp. ¶¶ 40-41.  While that may be true, "'[t]he relationship between a lending institution and its borrower-client is not fiduciary in nature.'"  *Lopez*, 2011 WL 6029875, at *12 (quoting *Nymark v. Heart Fed. Sav. & Loan Ass'n.*, 231 Cal. App. 3d 1089, 1093 n.1 (1991)).  "[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."  *Nymark*, 231 Cal. App. at 1096.  Plaintiff has alleged no facts suggesting that Defendants' relationship to Plaintiff is anything other than a traditional relationship between borrower and lender and loan servicer.

Accordingly, Plaintiff's constructive fraud claim is dismissed with prejudice.  *See Apostol v. CitiMortgage, Inc.*, No. 13-CV-01983 (WHO), 2013 WL 6328256, at *9 (N.D. Cal. Nov. 21, 2013) ("As agents of the mortgage lending and servicing defendants, no such fiduciary relationship can be established between Apostol and Moore/Bly to support a claim [sic] constructive fraud."); *James v. Litton Loan Servicing, LP,* No. C 10-05407 (CRB), 2011 WL

9

724969, at *3 (N.D. Cal. Feb. 22, 2011) (dismissing borrower's constructive fraud claim against lender and loan servicer on the basis that no fiduciary relationship exists).

### V.     Plaintiff Has Failed to State a Claim for Slander of Title

Plaintiff alleges that Defendants are liable for slander of title because they recorded in bad faith a Notice of Default and Notice of Intent to Foreclose (collectively, "Notices"), knowing that those Notices were based on an invalid security interest.  Am. Compl. ¶¶ 61-63, 67.  "To state a claim for slander of title, Defendants must allege '(1) a publication, (2) which is without privilege or justification, (3) which is false, and (4) which causes direct and immediate pecuniary loss.'"  *Watson v. Bank of Am., N.A.*, No. 16CV513 (GPC) (MDD), 2016 WL 6581846, at *21 (S.D. Cal. Nov. 7, 2016) (quoting *Manhattan Loft, LLC v. Mercury Liquors, Inc.*, 173 Cal. App. 4th 1040, 1051 (2009)).

The Notices on which Plaintiff bases his slander of title claim are subject to a qualified privileged under California law and cannot support a slander of title claim if the privilege applies.  *Watson*, 2016 WL 6581846, at *21 ("California Civil Code section 2924 also provides that the publication of notices, such as the Notice of Default and Notice of Trustee's sale, constitute privileged communications pursuant to California Civil Code section 47." (citing Cal. Civil Code §§ 2924(a)(1), (a)(3), (d)).  "An exemption to the privilege is predicated on an allegation of malice."  *Id.* (citing *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 333 (2008)).  "Malice requires 'that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights.'"  *Id.* (quoting *Kachlon*, 168 Cal. App. 4th at 336).

Plaintiff fails to allege any facts giving rise to an inference of malice.  Plaintiff makes the following boilerplate allegations: (1) "Defendants recorded the [Notices] against the property,

knowing that the foregoing were based upon an invalid security interest;" (2) "Defendants recorded the [Notices] with the intent to wrongfully foreclose against Plaintiff's property;" and (3) "Defendants recording of the void Assignment was done in bad faith, with malice, or done in reckless disregard of the rights of Plaintiff."  Am Compl. ¶¶ 61-63.  Because Plaintiff does no more than make conclusory allegations of malice, the Notices are privileged.  *See Pratap v. Wells Fargo Bank, N.A.*, No. C 12-06378 (MEJ), 2013 WL 5487474, at *8 (N.D. Cal. Oct. 1, 2013) (dismissing slander of title claim in part because allegations of malice were conclusory); *Ogilvie v. Select Portfolio Servicing*, No. 12-CV-001654 (DMR), 2012 WL 3010986, at *4 (N.D. Cal. July 23, 2012) ("Plaintiff alleges that Defendants acted in malice and reckless disregard for the truth when they formulated false documents. . . . However, this allegation is conclusory; the mere 'formulation of false documents' is inadequate to plead malice."); *Carrasco v. HSBC Bank USA Nat'l Ass'n*, No. C-11-2711 (EMC), 2011 WL 6012944, at *4 (N.D. Cal. Dec. 1, 2011) (dismissing slander of title claim in part because plaintiff's allegation that "Defendant[s] committed such acts knowingly and with the intent to cause harm and/or with reckless disregard for the Truth" was too conclusory to allege malice).[5]

        Accordingly, Plaintiff's slander of title claim is dismissed without prejudice.

---

[5]        Plaintiff mistakenly relies on *Lundy v. Selene Fin., LP*, No. 15-CV-05676 (JST), 2016 WL 1059423 (N.D. Cal. Mar. 17, 2016) to argue that the privilege does not apply here.  Pl. Opp. ¶ 55.  In *Lundy*, the district court held that the privilege did not apply pursuant to California Civil Code Section 2924 to the plaintiff's wrongful foreclosure claim against the mortgage servicer and trustee because the plaintiff's claims were based on the defendants' substantive decision to foreclose on the property and not based on the foreclosure notice or the procedures surrounding the notice.  2016 WL 1059423, at *4.  Here, in contrast, Plaintiff's slander of title claim is based on the Notices.  Am. Compl. ¶¶ 60-68.  Moreover, in *Lundy*, the district court also held that the privilege applied to the foreclosure trustee because it was only responsible for executing the foreclosure sale at the direction of the beneficiary, which included issuing the notices, and it was not responsible for the decision to initiate the foreclosure.  *Id.* at *5.  Similarly, here the slander of title claim is based on the publication of the Notices and not on the foreclosure itself.

**VI.     Plaintiff Has Failed to State Any Claim under HBOR**

In general terms and without identifying the specific HBOR provisions on which he is

relying, Plaintiff alleges that Defendants committed a variety of HBOR violations.  The alleged

HBOR violations include: (1) failure to contact Plaintiff prior to recording the Notice of Default,

which appears to implicate California Civil Code Section 2923.5; (2) failure to alert Plaintiff that

he could request documentation demonstrating Ocwen's authority to foreclose, which may

implicate California Civil Code Section 2923.55; (3) failure to provide post-Notice of Default

outreach with regard to the loan modification process, which appears to implicate California

Civil Code Section 2923.6; (4) failure to provide a single point of contact when requested by

Plaintiff, which implicates California Civil Code Section 2923.7; and (5) negligent or intentional

mishandling of the mortgage modification process, which prevented Plaintiff from completing

the modification process before foreclosure, which may implicate California Civil Code

Section 2923.6.  *See* Am. Compl. ¶ 72(a)-(e).

Because these allegations are "merely a formulaic recitation of the elements of a cause of

action," *Twombly*, 550 U.S. at 555, "devoid of further factual enhancement," *Iqbal*, 556 U.S. at

664, they do not plausibly allege a cause of action.  For example, to state a claim pursuant to

California Civil Code Section 2923.5, Plaintiff would need to allege whether he was

purposefully avoiding corresponding with Defendants, whether Defendants exercised due

diligence in trying to reach Plaintiff, and whether Plaintiff received any telephone calls or

personal messages from Defendants.  *Major v. Wells Fargo Bank, N.A.*, No. 14-CV-998 (LAB)

(RBB), 2014 WL 4103936, at *3 (S.D. Cal. Aug. 18, 2014); *see also Newman v. Bank of N.Y.*

*Mellon*, No. 1:12-CV-1629 (AWI) (GSA), 2013 WL 1499490, at *10-11 (E.D. Cal. Apr. 11,

2013) ("In order to plead a violation of § 2923.5, a plaintiff should include allegations that: (1)

he did not receive mail or telephone calls from the mortgage servicer/lender regarding assessing

his financial situation and exploring alternatives to foreclosure; (2) he was not purposefully

avoiding corresponding with the mortgage servicer/lender, and; (3) he could have been contacted

if due diligence had been exercised.").  As another example, to state a claim under California

Civil Code Section 2923.55, Plaintiff must allege when he requested the documents to which he

is entitled under this Section and in what manner he made the request.  *Major*, 2014 WL

4103936 at *5.  Plaintiff's HBOR claims are therefore dismissed without prejudice.  *See Garcia*

*v. PNC Mortg.*, No. C 14-3543 (PJH), 2015 WL 534395, at *4-7 (N.D. Cal. Feb. 9, 2015)

(dismissing conclusory HBOR claims; *Major*, 2014 WL 4103936, at *2-6 (same); *Newman*,

2013 WL 1499490, at *10-11 (same).

**VII.    Plaintiff Has Failed to State a Claim for Declaratory Judgment**

   Pursuant to the Declaratory Judgment Act ("DJA"), "[i]n a case of actual controversy

within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal

relations of any interested party seeking such declaration, whether or not further relief is or could

be sought."  28 U.S.C. § 2201(a) (emphasis added).  A district court has discretion whether to

exercise jurisdiction under the DJA.  *See Dow Jones & Co. v. Harrods, Ltd.*, 346 F.3d 357, 359

(2d Cir. 2003) (per curiam); *Bruce Winston Gem Corp. v. Harry Winston, Inc.*, No. 09-cv-7352

(JGK), 2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010).  Nevertheless, courts must entertain

declaratory judgment actions when the judgment "will serve a useful purpose in clarifying and

settling the legal relations in issue" or "when it will terminate and afford relief from the

uncertainty, insecurity, and controversy giving rise to the proceeding."  *Cont'l Cas. Co. v.*

*Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992) (citation omitted); *see also Duane Reade,*

*Inc. v. St. Paul Fire and Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005).

   "[T]he 'jurisdictional' analysis in a declaratory judgment action comprises a two part

inquiry: (1) whether subject matter exists because the declaratory judgment action meets the

constitutional case or controversy requirement; and, if so (2) whether the Court should *exercise*

that jurisdiction." *U.S. Dep't of Treasury v. Official Comm. of Unsecured Creditors of Motors*

*Liquidation Co.*, 475 B.R. 347, 358 (S.D.N.Y. 2012).  At the first stage of the inquiry, to

determine whether the plaintiff satisfies Article III standing, the court must consider whether the

plaintiff has shown that: "(1) he has suffered an actual or imminent injury in fact, which is

concrete and particularized; (2) there is a causal connection between the injury and defendant's

actions; and (3) it is likely that a favorable decision in the case will redress the injury." *Gonzalez*

*v. J.P. Morgan Chase Bank*, N.A., No. 16-CV-02611 (JGK), 2017 WL 122993, at *5 (S.D.N.Y.

Jan. 12, 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  In addition,

the plaintiff must satisfy the prudential standing rule, which "'normally bars litigants from

asserting the rights or legal interests of others in order to obtain relief from injury to

themselves.'"  *Id.* at *6 (quoting *Warth v. Seldin*, 422 U.S. 490, 509 (1975)).  At the second stage

of the inquiry, the Second Circuit requires district courts to consider: "(1) whether the judgment

will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a

judgment would finalize the controversy and offer relief from uncertainty." *Duane Reade*, 411

F.3d at 389.  Additional factors include "'(1) whether the proposed remedy is being used merely

for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment

would increase friction between sovereign legal systems or improperly encroach on the domain

of a state or foreign court; and (3) whether there is a better or more effective remedy.'"  *Chevron*

*Corp. v. Naranjo*, 667 F.3d 232, 245 (2d Cir. 2012) (quoting *Dow Jones Co.*, 346 F.3d at 359-

60).

     Arguing that Defendants do not have a valid security interest in the Property because the

Note and Deed of Trust were allegedly improperly assigned, Plaintiff seeks a declaratory

judgment stating that "all attempts to foreclose by Defendants against the subject property are

void." Am. Compl. ¶¶ 75-78. To the extent that Plaintiff's declaratory judgment claim is based

on a violation of the PSA, his claim is dismissed with prejudice for lack of prudential standing

because Plaintiff cannot establish that he was an intended beneficiary of the PSA. *See Gonzalez*,

2017 WL 122993, at *6 (holding plaintiff lacked prudential standing to pursue declaratory

judgment claim based on violations of the PSA); *see also Rajamin v. Deutsche Bank Nat'l Trust

Co.*, 757 F.3d 79, 86-87 (2d Cir. 2014). To the extent Plaintiff requests a declaratory judgment

to determine whether the ongoing foreclosure proceeding[6] is void because the Note and Deed of

Trust were allegedly held by separate entities in violation of their terms and of California law,

Plaintiff also lacks standing. Plaintiff does not dispute that he is in default of his mortgage;

Plaintiff alleges that the Trust, claiming to own the mortgage, has initiated the foreclosure.

Plaintiff does not allege that any entity other than Defendants has demanded payments or

attempted to commence foreclosure. For this reason, Plaintiff's purported injury arising from the

alleged improper assignments is too speculative and hypothetical to support standing. *Rajamin*,

757 F.3d at 85 (holding plaintiffs failed to allege injuries sufficient to show constitutional

standing to support a declaratory judgment claim that assignees did not own the mortgages when,

*inter alia*, the assignees claiming to own the mortgages initiated foreclosure, and there were no

allegations that another entity demanded loan payments or threatened foreclosure); *see also

Houck v. US Bank NA*, No. 15-CV-10042 (AJN), 2016 WL 5720783, at *8 (S.D.N.Y. Sept. 30,

2016); *Ocampo v. JP Morgan Chase Bank, N.A.*, 93 F. Supp. 3d 109, 117 (E.D.N.Y. 2015),

*appeal dismissed* (May 19, 2015).

---

[6]     The status of the non-judicial foreclosure proceeding is unclear. Plaintiff alleges that the foreclosure sale
was rescheduled for March 14, 2016, Am. Compl. ¶ 22, which date has passed, and neither party addressed in their
briefs the current status of the foreclosure proceeding.

Plaintiff cites *Springer v. U.S. Bank Nat'l Ass'n*, No. 15-CV-1107(JGK), 2015 WL 9462083, at \*7 (S.D.N.Y. Dec. 23, 2015), *appeal dismissed* (Apr. 6, 2016), to argue that he has standing.  Pl. Opp. ¶¶ 61-63, 70-72.  In *Springer*, the district court held that the plaintiff had standing to seek a declaratory judgment adjudicating whether defendants had a property interest in the note and deed of trust and whether the foreclosure was defective under Nevada law.  2015 WL 9462083, at \*6-8.  The court reached that conclusion based on the plaintiff's allegations that the separation of the note and deed of trust violated their terms and Nevada law and that the defendants, relying on invalid assignments, had initiated non-judicial foreclosure.  *Id.*  The court in *Springer* attempted to distinguish *Rajamin* on the ground that in *Rajamin* the assignments were allegedly invalid only because they violated the PSA and were recorded after the closing date of the trusts, while in *Springer* the assignments were allegedly invalid because they violated the terms of the note and deed of trust and Nevada law.  *Springer*, 2015 WL 9462083, at \*8.  This Court is not persuaded that the distinction drawn in *Springer* matters inasmuch as those nuances did not appear to play any part in the Second Circuit's holding that the plaintiffs lacked standing because they did not allege that any other entity was also demanding payment or threatening foreclosure.

But even if *Springer* did provide an exception to *Rajamin's* holding relative to standing, and the exception applied in this case, this Court would employ its discretion to decline to exercise jurisdiction.  Unlike in *Springer*, where the court exercised jurisdiction because the parties had agreed to transfer the case to the District of Nevada where the property was located and foreclosure was ongoing, 2015 WL 9462083, at \*8, here, the parties have not indicated that they intend to transfer the case to a district court in California, where the property is located and foreclosure proceedings appear to be ongoing.  Declaratory relief at this juncture would not serve a useful purpose and may result in conflict if the foreclosure proceedings continue to proceed

through the California state courts.  It is also not unreasonable to suspect that Plaintiff brought

this claim in a "race for res judicata."  Plaintiff's declaratory judgment claim is, therefore,

dismissed with prejudice.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Amended Complaint

is GRANTED.  The Clerk of Court is respectfully directed to terminate the open motion at

docket entry 26 and to close the case.

**SO ORDERED.**

**Date:  March 2, 2017**
        **New York, New York**                                **VALERIE CAPRONI**
                                                  **United States District Judge**